```
-----------------------------x
                             :
MELANIA RIVERA               :      Civ. No. 3:18CV02001(SALM)
                             :
v.                           :
                             :
ANDREW M. SAUL,              :      August 15, 2019
COMMISSIONER, SOCIAL         :
SECURITY ADMINISTRATION¹     :
                             :
-----------------------------x
```

## RULING ON CROSS MOTIONS

Plaintiff, Melanie Rivera, brings this appeal pursuant to §205(g) of the Social Security Act ("the Act"), as amended, seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Plaintiff has moved for an order reversing the decision of the Commissioner, or in the alternative, for remand [Doc. #12]. Defendant has filed a motion for an order affirming the decision of the Commissioner [Doc. #17]. Plaintiff filed a statement of material facts [Doc. #12-2], which the Commissioner "generally accepts[,]" and to which he has added additional material facts. Doc. #17-1.

---

[1] Andrew M. Saul was confirmed as Commissioner of the Social Security Administration on June 4, 2019. He is now the proper defendant. See Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g). The Clerk of the Court is directed to update the docket accordingly.

For the reasons set forth below, plaintiff's Motion to Reverse or Remand **[Doc. #12]** is **GRANTED**, to the extent that it seeks remand for further proceedings, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #17]** is **DENIED**.

I.  **PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on January 12, 2016, alleging disability beginning October 1, 2015. See Certified Transcript of the Administrative Record, Doc. #16 and attachments, compiled on January 29, 2019, (hereinafter "Tr.") at 51. Plaintiff's application was denied initially on March 2, 2016, see Tr. 69, and upon reconsideration on April 20, 2016, see Tr. 75.

On September 28, 2017, plaintiff, represented by Attorney Rebecca Brodner,[2] appeared and testified, through an interpreter, before Administrative Law Judge ("ALJ") John Noel. See Tr. 33-45. Vocational Expert ("VE") Edmond J. Calandra testified by telephone at the hearing. See Tr. 33, 45-48. On October 27, 2017, the ALJ issued an unfavorable decision. See Tr. 18-27. On October 9, 2018, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's October 27, 2017, decision

_____

[2] At the time of the hearing plaintiff was also represented by Attorney Robert J. Levine. See Tr. 18. Plaintiff is now represented by Attorney Olia M. Yelner. See Doc. #12 at 1.

the final decision of the Commissioner. <u>See</u> Tr. 1-3. The case is now ripe for review under 42 U.S.C. §405(g).

**II.  <u>STANDARD OF REVIEW</u>**

The review of a Social Security disability determination involves two levels of inquiry. <u>First</u>, the court must decide whether the Commissioner applied the correct legal principles in making the determination. <u>See</u> <u>Balsamo v. Chater</u>, 142 F.3d 75, 79 (2d Cir. 1998). <u>Second</u>, the court must decide whether the determination is supported by substantial evidence. <u>See</u> <u>id.</u> Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. <u>See</u> <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. <u>See</u> <u>Norman v. Astrue</u>, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial

3

evidence."). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have [his] disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988). It is well established that "an ALJ's credibility determination is generally entitled to deference on appeal." Selian v. Astrue, 708 F.3d 409, 420 (2d Cir. 2013); see also Kessler v. Colvin, 48 F. Supp. 3d 578, 595 (S.D.N.Y. 2014) ("A federal court must afford great deference to the ALJ's credibility finding, since the ALJ had the opportunity to observe the claimant's demeanor while the claimant was testifying." (citation and internal quotation marks omitted)); Pietrunti v. Dir., Office of Workers'

Comp. Programs, 119 F.3d 1035, 1042 (2d Cir. 1997) ("Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." (citation and internal quotation marks omitted)).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012). **"[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision**." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013).

## III. <u>SSA LEGAL STANDARD</u>

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); see also 20 C.F.R. §404.1520(c) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities[]" to be considered "severe").[3]

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §404.1520. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If [she] is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work

---

[3] Some of the Regulations cited in this decision, particularly those applicable to the review of medical source evidence, were amended effective March 27, 2017. Those "new regulations apply only to claims filed on or after March 27, 2017." Smith v. Comm'r, 731 F. App'x 28, 30 n.1 (2d Cir. 2018) (summary order). Where a plaintiff's claim for benefits was filed prior to March 27, 2017, "the Court reviews the ALJ's decision under the earlier regulations[.]" Rodriguez v. Colvin, No. 3:15CV1723(DFM), 2018 WL 4204436, at *4 n.6 (D. Conn. Sept. 4, 2018); White v. Comm'r, No. 2:17CV04524(JS), 2018 WL 4783974, at *4 (E.D.N.Y. Sept. 30, 2018) ("While the Act was amended effective March 27, 2017, the Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect." (citation omitted)).

activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider [her] disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [she] has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given [her] residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003));

Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). "Residual functional capacity" ("RFC") is what a person is still capable of doing despite limitations resulting from her physical and mental impairments. See 20 C.F.R. §404.1545(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied." Id. (citation and internal quotation marks omitted).

## IV.  THE ALJ'S DECSION

Following the above-described five-step evaluation process, the ALJ concluded that plaintiff was not disabled under the Act. See Tr. 27. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 1, 2015. See Tr. 20. At step two, the ALJ found that plaintiff had the severe impairments of "diabetes mellitus and obesity[.]" Tr. 20.

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. See Tr. 22. Before moving on to step four, the ALJ found plaintiff had the RFC "to perform the full range of medium work as defined in 20 CFR 404.1567(c)." Tr. 22.

At step four, the ALJ concluded that plaintiff "is capable of performing past relevant work as a Haridresser." See Tr. 26. At step five, and after considering the testimony of the VE as well as plaintiff's age, education, work experience, and RFC, the ALJ found that, in addition to her past work as a Hairdresser, other jobs exist in significant numbers in the national economy that plaintiff could perform. See Tr. 26.

## V.    DISCUSSION

Plaintiff claims that the ALJ erred in the following ways:

1. The ALJ failed to develop the record by obtaining necessary opinion evidence, see Doc. #12-1 at 6-8; and

2. The ALJ's RFC determination is not supported by substantial evidence, and fails to account for plaintiff's pain, see Doc. #12-1 at 8-13.

The Court finds that remand is warranted because the ALJ's determination that plaintiff had the residual functional capacity to perform the full range of medium work was not supported by substantial evidence. Specifically, the Court finds that the medical opinion and records on which the ALJ relied

were insufficient because none assessed plaintiff's <u>durational</u> functional ability to stand, walk, lift, and carry. Plaintiff's ability to perform each of these functions was called into question by both objective medical evidence and plaintiff's testimony. The Court does not address plaintiff's remaining arguments.

A claimant's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. §404.1545(a)(1). "The RFC determination is reserved for the Commissioner." <u>Harrison v. Comm'r of Soc. Sec.</u>, No. 1:17CV98(WMS), 2018 WL 3153399, at *3 (W.D.N.Y. June 28, 2018). However, "it is well-settled that the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." <u>Balsamo v. Chater</u>, 142 F.3d 75, 81 (2d Cir. 1998) (citations and quotation marks omitted). "An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." <u>Guttierez v. Berryhill</u>, 333 F. Supp. 3d 267, 271 (W.D.N.Y. 2018) (citations and quotation marks omitted). Indeed, "[w]here the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. §404.1567(a) ... the Commissioner may not make the connection himself." <u>Walker</u>,

2010 WL 2629832, at *6 (citation and internal quotation marks omitted). However, if "the medical evidence shows relatively little physical impairment, an ALJ [may] permissibly [] render a common sense judgment about functional capacity even without a physician's assessment[.]" Walker, 2010 WL 2629832, at *7 (quoting Manso-Pizarro v. Sec. of Health and Human Servs., 76 F.3d 15, 17 (1st Cir. 1996)).

Here, the ALJ concluded that plaintiff had the RFC to perform medium work. See Tr. 22. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §404.1567(c).

> A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds.
>
> ...
>
> [T]here are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semiskilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *6 (S.S.A. Jan. 1, 1983) (emphasis added). To find plaintiff

capable of medium work, therefore, the ALJ was required to make findings supported by medical evidence regarding plaintiff's ability to stand, walk, lift, and carry in accordance with the requirements for medium work.

Plaintiff testified that she "cannot stand for very long[,]" and that she has "tingling, and a lot of pain in [her] nerves. And a lot of inflammation[]" in her feet. Tr. 39. Specifically, plaintiff testified that she could stand for "[n]o more than half an hour[]" before she needs to sit down, and that she cannot "do much walking during the day[.]" Tr. 40. She stated that she cannot lift twenty pounds, see id., and that she can no longer engage in household chores, such as vacuuming, due to pain in her back and arm, see Tr. 41. Plaintiff testified that she can no longer go grocery shopping because she "cannot walk for very long in the supermarket, and the pain bends [her] over." Tr. 42. She also no longer attends church services, because the services require sitting and standing for a longer period of time than she is able. See Tr. 42-43. Plaintiff claims that she cannot sit for more than an hour due to her back pain. See Tr. 43.

Plaintiff testified that due to regular inflammation, she soaks her "feet in some hot water with Epsom salts and apple vinegar[]" each day, and elevates her feet to heart level "[f]our or five times[]" each day for "45 minutes to an hour."

Tr. 44. Laying down also helps to alleviate her back pain, she asserted, see id., "[a]nd at night, [she] sleep[s] with some pillows under [her] legs with [her] legs raised[,]" Tr. 45.

Plaintiff's testimony describes a functional capacity well below the full range of medium work. After evaluating plaintiff's testimony, the ALJ concluded:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

Tr. 23.

Plaintiff points out that the administrative record "contains no treating physician opinion, nor opinions from any 'other' treating medical sources." Doc. #12-1 at 6. The Commissioner does not challenge this assertion, but argues that the ALJ's decision is supported by treatment notes, as well as by the medical opinions in the record "of consultative examiner Dr. Robert M. Dodenhoff and State agency physicians Henry Scovern and Abraham Bernstein[,]" none of whom treated plaintiff. Doc. #17-2 at 5. The lack of medical opinion evidence from treating sources is significant, because it means that the ALJ had only limited and non-specific functional assessments on which to rely. The ALJ rejected plaintiff's description of her

impairments in reliance on an opinion from a non-treating medical professional, and notes from plaintiff's treating physicians, neither of which provide any function-by-function assessment of her abilities.[4]

The Court finds that two of the ALJ's conclusions are not supported by substantial evidence: First, that plaintiff is capable of being on her feet for the bulk of the workday; and second, that she can lift 50 pounds and carry 25 pounds.

With regard to plaintiff's allegations regarding her feet, the ALJ found:

> Regarding the claimant's alleged diabetic neuropathy, the totality of the record does not support a determination that her diabetes has caused significant symptoms of neuropathy in her bilateral feet consistent with her testimony. The claimant has reported symptoms of numbness and tingling in her bilateral feet, for which she has received treatment with medication (Ex. 2F, 42; 4F, 40-41). Throughout the record, the claimant has been in treatment with a podiatrist for diabetic foot care every few months. In examination with her podiatrist, the claimant received regular debridement of her toenails, but consistently demonstrated normal findings on monofilament examination, without evidence of decreased sensation or vibrations. Additionally, she recorded normal neurovascular findings of strength,

---

[4] The Court notes that the record in this case is limited. The entire transcript is comprised of 421 pages, of which 194 pages are medical records and medical opinion. See Tr. 227-421. More than a third of those pages are duplicates. Compare Tr. 245-53 with Tr. 289-94, 325-27, and with Tr. 339-44, 367-69. A thorough review of the record reveals 125 unique pages of medical records and opinions, of which 83 post-date the alleged onset date, and 42 pre-date the alleged onset date. See Tr. 245-50, 254-255, 295-313, 315-16, 328-333, 373-419, 421 (post-dating the alleged onset date); Tr. 227-44, 251-53, 256-71, 320-24 (pre-dating the alleged onset date).

reflexes and gait, as well as normal findings of pedal pulses in her bilateral lower extremities. Significantly, examination does not record significant warmth or edema in her bilateral ankles or feet, inconsistent with the claimant's testimony regarding regular swelling of her feet. Based on findings on examination, her treating source did not assess her with diabetic neuropathy (Ex. 1F, 10; 2F, 41; 4F, 43, 46, 50, 52, 63, 68-69, 79, 82).

In summary, the totality of the record does not show findings on examination, or decreased sensation or other neurovascular abnormalities, consistent with a diagnosis of neuropathy. Additionally, the claimant is not observed to show findings of warmth or edema in her bilateral ankles or feet, inconsistent with the claimant's allegations regarding regular foot swelling. I find the totality of the record to be inconsistent with her allegations regarding her neuropathic foot pain or lower extremity swelling, and does not support a determination that the claimant would need to regularly elevate her feet, or have significant limitations in her ability to stand, walk, or perform postural activities.

Tr. 24.

The ALJ erred when he found that plaintiff could stand and walk for extended periods based on the medical records of her treating podiatrist.[5] Plaintiff's testimony, in combination with

_____

[5] Plaintiff's testimony also calls into question her ability to sit for extended periods; however, it appears that restriction may relate to her alleged impairment of sciatica. See Tr. 21, 43. The ALJ found that plaintiff's sciatica was not a severe impairment, see Tr. 21, and the Court does not address that finding, or whether the ALJ erred with regard to plaintiff's ability to sit. Plaintiff argues that the ALJ failed to evaluate plaintiff's complaints of pain, including her sciatica, in combination with her other impairments, resulting in an improper RFC determination, but does not specifically challenge the ALJ's finding at step two that sciatica was not a severe impairment.

notes from her treating sources, establishes that her
impairments impacting her ability to stand and walk are
significant. While plaintiff's testimony describes functional
limitations that are not specifically described by her treating
medical providers, her testimony is supported by objective
medical evidence. Accordingly, it was inappropriate for the ALJ
to exercise his own judgment regarding plaintiff's functional
abilities.

The medical notes in this case describe more than nominal
restrictions in plaintiff's ability to walk or stand for
extended periods, and substantiate her claims of regular
swelling in her lower extremities. These facts, in combination,
should have triggered further inquiry by the ALJ. When plaintiff
presented with right leg pain, she was advised to apply heat and
use the RICE method. See Tr. 257-59. Plaintiff presented with
numbness and swelling in her feet and ankles, bilaterally, on
multiple occasions. See Tr. 236 ("Edema – Location: ankle, Side:
bilateral[]"), 270 (same), 297 ("Swelling – Right: mild, foot,
Left, mild, foot."), 379 (pain and swelling in the left lower
extremity). These records contradict the ALJ's assertion that
"examination does not record significant warmth or edema in her

_____

See Doc. #12-1 at 8-13. On remand, the ALJ shall obtain a
functional assessment of plaintiff's durational ability to sit.

bilateral ankles or feet, inconsistent with the claimant's testimony regarding regular swelling of her feet." Tr. 24. Plaintiff's medical records also document pain and infections in her feet.[6] See Tr. 297 ("Foot/ankle – Right: pes planus, Left: bunions"), 401 ("Tinea pedis of both feet").

These records, in combination with plaintiff's testimony, indicate that plaintiff may have some significant restriction on her ability to stand or walk for extended periods. There is no medical assessment in the record to the contrary. "[I]t was not permissible for the ALJ to render a common sense assessment about plaintiff's [] functioning, particularly in light of [his] finding that plaintiff suffers from the severe" impairments of diabetes mellitus and obesity. Barnes v. Berryhill, No. 3:16CV01013(SALM), 2018 WL 1225542, at *7 (D. Conn. Mar. 9, 2018). "In that regard, the ALJ should have obtained a function-by-function assessment of plaintiff's [] abilities from [a treating physician] or a consultative examiner." Id. (emphasis added).

Accordingly, the Court finds that the ALJ's conclusion that plaintiff can be on her feet for most of the day, as required for medium work, is not supported by substantial evidence.

_____

[6] As the ALJ acknowledged, "bacterial and fungal skin infections" may be a result of plaintiff's diabetes, which the ALJ found to be a severe impairment. Tr. 22.

The ALJ also erred when he determined that plaintiff can meet the lifting and carrying requirements of medium work, lifting up to "50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §404.1567(c). The ALJ made two findings regarding plaintiff's ability to lift: (1) "Dr. Dodenhoff opined that the claimant could sit, stand, walk, lift carry and handle objects (Ex. 3F)[;]" and (2) "On examination she displayed normal strength and range of motion in all joints in her upper and lower extremities bilaterally, without tenderness or limited range of motion in her lumbar spine." Tr. 25. Exhibit 3F contains Dr. Dodenhoff's brief summary of his consultative examination of plaintiff. See Tr. 331-32. Dr. Dodenhoff did not review any of plaintiff's medical records, nor did he review any laboratory results. See Tr. 332 ("LABS/NOTES FOR REVIEW: None submitted."). His report does not discuss plaintiff's <u>durational</u> abilities with respect to her capacity to sit, stand, or walk, nor what <u>weight</u> she can lift and carry, or how frequently. Dr. Dodenhoff's opinion is not sufficiently detailed to permit the ALJ to make the findings in the RFC.

The ALJ relied on statements that plaintiff is capable, generally, of standing, walking, carrying, and lifting, which plaintiff does not appear to dispute, and a variety of "normal" or lack of "abnormal" medical findings to support his conclusion

that she can do each activity as long as is required for the
full range of medium work. See, e.g., Tr. 21 (strength), 24
(standing and walking).

It is "unreasonable to extrapolate from 'normal' evaluation
scores that claimant can lift fifty pounds and carry twenty-five
pounds. The word 'normal' is too vague to bear the weight that
the Agency consultants [and the ALJ] apparently placed upon it."
Givens v. Berryhill, No. 3:16CV2102(WIG), 2017 WL 5593780, at *4
(D. Conn. Nov. 21, 2017) (quoting Blackert v. Berryhill, No.
3:16CV1327(JCH), 2017 WL 3168580, at *6 (D. Conn. July 26, 2017)
(quotation marks and alterations omitted)); see also Selian v.
Astrue, 708 F.3d 409, 421 (2d Cir. 2013) (finding a medical
report stating that a claimant "should be able to lift ...
objects of a mild degree of weight on an intermittent basis[]"
insufficient to support an RFC including the lifting and
carrying requirements of light work). Accordingly, the Court
finds that substantial evidence does not support the ALJ's
conclusion that plaintiff can perform the lifting and carrying
requirements of medium work.

> Where, as here, the medical findings and reports merely
> diagnose the claimant's impairments without relating the
> diagnoses to specific ... work-related capacities, the
> administrative law judge's determination of residual
> functional capacity without a medical advisor's
> assessment of those capacities is not supported by
> substantial evidence. Given Plaintiff's multiple
> physical ... impairments, this is not a case where the
> medical evidence shows relatively little physical

impairment such that the ALJ can render a common sense judgment about functional capacity.

Staggers v. Colvin, No. 3:14CV00717(JCH)(SALM), 2015 WL 4751108, at *6 (D. Conn. June 17, 2015), report and recommendation adopted, 2015 WL 4751123 (D. Conn. Aug. 11, 2015) (citation and quotation marks omitted) (collecting cases). Remand is warranted because the "ALJ fail[ed] to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record[.]" Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam).

## VI. CONCLUSION

For the reasons set forth herein, plaintiff's Motion to Reverse or Remand **[Doc. #12]** is **GRANTED**, to the extent that it seeks remand for further proceedings, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #17]** is **DENIED**. On remand, the ALJ shall conduct a new, full hearing on plaintiff's application, and consider all claims of error not addressed herein. The ALJ shall not be limited by any of his prior findings. The ALJ shall obtain a function-by-function assessment of plaintiff's durational ability to sit, stand, walk, lift, and carry from at least one of plaintiff's treating physicians or a consulting physician. The ALJ, or plaintiff, may solicit functional assessments from multiple sources.

The Court offers no opinion on whether the ALJ should or will find plaintiff disabled on remand, nor whether the ALJ will or should find her capable of work at any specific exertional level. "It may be that, had their opinion been elicited, the practitioners who evaluated [plaintiff's abilities] would have opined that she was capable of medium work but, in the absence of [relevant] opinion evidence, the raw data alone does not suffice to satisfy the 'substantial evidence' standard." Blackert v. Berryhill, 2017 WL 3168580, at *6 (D. Conn. July 26, 2017).

SO ORDERED at New Haven, Connecticut, this 15th day of August, 2019.

_____
/s/
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE